El Pueblo de Puerto Rico, demandante y apelado, *v.* Pedro Firpi Negro, acusado y apelante.

Número: CR-67-60    Resuelto: 6 de junio de 1968

*Julio Suárez Garriga,* abogado del apelante; *J. F. Rodríguez Rivera, Procurador General Interino,* y *Elpidio Arcaya, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Acusado y convicto del delito de incesto y condenado a la pena de dos a ocho años de presidio, apunta el apelante en apelación que el tribunal de instancia incidió (1) al instruir al jurado que el delito de incesto no necesita corroboración de la declaración de la mujer si ésta es obligada a realizar actos carnales y al definir ese delito como incesto en vez de definirlo como violación, lo que indujo al jurado a rendir un veredicto de violación sin corroboración; (2) al permitir que el fiscal anunciara en su teoría que "desde la edad de 12 años la perjudicada estaba viviendo maritalmente con el acusado"; (3) al resolver ante el jurado que la perjudicada no es una niña de inteligencia normal cuando ella demostró lo contrario; apuntó, además, (4) que el jurado incidió en la apreciación de la prueba.

Examinado el récord y considerado el derecho aplicable, concluimos que ni el tribunal ni el jurado incurrieron en los errores apuntados y que la sentencia condenatoria debe confirmarse.

La perjudicada testificó que vivía con el apelante (su padre) y un hermanito de diez años en una habitación del sector de Tras Talleres, en Santurce. Su papá la obligaba a acostarse a las 5:30 de la tarde. Ella dormía en una cama pequeña y su papá y su hermano en una grande. A las 8:30 de la noche su padre la llamaba, le ordenaba al hermanito que se fuera para la cama de ella y él se iba. Luego que el hermanito estaba en la cama de ella, la llamaba para que se fuera para la cama con él. Ella no iba y entonces él cogía un punzón y un alambre eléctrico y le pegaba, la sacaba por encima de su hermanito y la arrastraba hasta su cama. El hermanito no se despertaba. Luego que su papá la tenía en la cama de él la amarraba del espaldar de la cama y luego la desnudaba y cometía el acto carnal. Estaba "una hora, o treinta o veinticinco minutos encima de ella"; sentía la penetración del miembro de su papá en su vagina. Dijo que cuando su papá le pegaba con el alambre, no lloraba pero se quedaba marcada. Su hermano no se daba cuenta de nada de esto. Declaró que de las heridas le salía sangre pero que no tenía cicatrices. Ella hablaba duro y su hermanito no se despertaba. Eso lo estuvo haciendo su papá (el apelante) desde que ella cumplió doce años hasta el mes de febrero de 1966; en enero le hizo lo mismo. La última vez fue la misma noche que su medio hermano Hiram fue a visitarlos, como a las diez de la noche. Luego se fue a vivir con su medio hermano y su esposa a Caparra Terrace. A las tres semanas de estar viviendo con ellos le contó a su hermano lo que su papá le había hecho. El hermano la llevó a un examen médico. El examen médico de la perjudicada realizado en 25 de febrero de 1966 revela que "tenía escoriaciones en el himen, el cual no estaba intacto . . . . No era

virgen . . . ." El perito médico fue intensamente interrogado sobre cuándo pudo haber ocurrido la desfloración y en resumen no pudo precisar. Dijo que pudo haber ocurrido hasta diez días antes de él examinarla o mucho tiempo antes. Encontró una hematoma en el labio derecho de la vulva, que pudo ocurrir debido a coito, caída o golpe "o a haberse causado . . . con la uña o con un golpe en un escritorio." Era de fecha reciente, posterior a la desfloración, de "horas hasta cuatro o cinco días" antes del examen médico practicado.

1.—Sostiene el apelante en apoyo de su primer apuntamiento que el delito de incesto es uno de los que requiere corroboración porque (a) si la perjudicada consiente a la relación ilícita es cómplice, y en ese caso su declaración debe ser corroborada a tenor con la Regla 156 de Procedimiento Criminal; o, (b) si no consiente, no es cómplice pero la falta de consentimiento implica que fue obligada a ello por medio de la fuerza, la violencia o la intimidación; en ese caso se trata de una violación y es necesaria la corroboración según dispone la Regla 154 de Procedimiento Criminal.

Una contención como ésa fue aducida en *People* v. *Stratton*, 75 Pac. 166 (Cal. 1904). Se resolvió que "El gravamen de los delitos de incesto y violación es la relación sexual ilícita. En la violación es ilícita por los medios usados. En el incesto es ilícita, independientemente de los medios usados, debido a la consanguinidad o afinidad. Cuando las dos circunstancias de fuerza y consanguinidad están presentes, siendo el propósito del estatuto prohibir dicha relación, no es menos incesto porque se añada el elemento de la violencia; no es menos violación porque sea con un pariente. En este caso, como en todo delito, la culpabilidad del acusado se mide por su propio conocimiento e intención y no por el de otra persona." En *People* v. *Kaiser*, 51 Pac. 702 (Cal. 1897), el acusado fue enjuiciado por el delito de incesto, alegadamente cometido en su hija de trece años. Éste adujo que el delito cometido fue el de violación ya que una menor de

trece años no puede legalmente consentir. Se resolvió que "asumiendo que los hechos alegados en la acusación sean suficientes para constituir el delito de violación, aun bajo el artículo 285 del Código Penal [275 del nuestro] claramente constituye el delito de incesto y puede ser enjuiciado y convicto por este delito." *Prosecution in Incest Cases as Accomplice or Victim,* 74 A.L.R.2d 705.

No es necesario pasar sobre la cuestión de la corroboración del testimonio de la perjudicada pues la prueba demuestra que ella nunca consintió a la relación incestuosa. El delito de incesto no está cubierto por la Regla 154 de las de Procedimiento Criminal que requiere la corroboración del testimonio de la mujer agraviada en el proceso por uno de los delitos a que hace referencia dicha Regla.

2.—Señala el apelante que los hechos anunciados en la teoría y traídos como prueba eran muy remotos, ya prescritos, y eso dejó al acusado-apelante en una indefensión total.

De entrada, es necesario dejar establecido que la teoría del caso anunciada por las partes al jurado no constituye prueba de los hechos alegados. Surge de la transcripción de evidencia que el juez de instancia manifestó que al acusado se le estaba enjuiciando por hechos ocurridos en enero de 1966 y si el fiscal no lograba probar esos hechos él ordenaría que se dictase un veredicto perentorio de absolución.

Por otro lado, es norma de derecho que hechos similares al imputado, si no son muy remotos, son admisibles para probar intención y designio. La determinación de si la evidencia es remota o no depende de las cuestiones envueltas en el caso. No es una norma inflexible y lo que es remoto en un caso en otro puede no serlo.

En muchas jurisdicciones se ha reconocido que en procesos por violación, contra natura, o incesto, cometidos en niñas

que no tienen edad para consentir, o de otra forma legalmente incapacitadas para prestar el consentimiento, es admisible evidencia demostrativa de actos similares cometidos por el acusado en la perjudicada, siempre que no sean muy remotos en tiempo para corroborar la identidad de las partes y la ofensa, pero no para probar una ofensa distinta.

En el caso de autos la evidencia tiende a demostrar que el apelante tuvo la primera relación sexual con la perjudicada cuatro años antes del hecho por el que se le acusa; que estos actos fueron continuos y que se extendieron hasta el momento en que se le imputa, o sea, hasta enero de 1966. Bajo esas circunstancias, tanto el primer acto como los subsiguientes son próximos. En *State* v. *Browder*, 112 S.E.2d 728 (N.C. 1960) (violación) se permitió al Estado presentar evidencia de actos similares con la misma niña desde seis años atrás.

Aduce el apelante que el fiscal podía alegar en su acusación hechos similares de tres años atrás y no lo hizo, sin embargo trajo prueba de hechos que ya están prescritos. El propósito de esa evidencia no era conseguir una convicción por hechos prescritos; tampoco se pidió convicción por esos hechos. El testimonio era admisible porque los varios actos estaban tan relacionados entre sí que los primeros actos tendían a probar el delito imputado. *People* v. *Turner*, 102 N.E. 1036 (Ill. 1913) (incesto). *Admissibility in Prosecution for Several Offenses, Evidence of Other Similar Offense*, 167 A.L.R. 565.

Las instrucciones al jurado fueron claras en el sentido de que al apelante no se le estaba enjuiciando por hechos anteriores a la fecha en que la acusación le imputaba el delito sino que tenían que decidir si para el mes de enero de 1966 efectivamente y fuera de toda duda razonable quedó establecido el hecho de que el apelante sostuvo relaciones sexuales con su hija. No se incurrió en el error apuntado.

3.—El juez de instancia tuvo que intervenir en este caso en la forma siguiente:

"P. Te tiene ya desnuda; amarrada con las dos manos arriba y de la cama de él, oscuro pero que se ve un poco de claridad por la rendija por cuya claridad viste el punzón; qué te hizo entonces, ante tí?

R. Acostó encima de mí.

P. Desnudo?

R. Sí señor.

P. Le notaste el pipí a él . . . como tú dijiste se lo viste?

R. . . .

P. Por qué piensas para contestar esa pregunta?

HON. FISCAL:

Eso no es nada malo.

LIC. SUÁREZ:

Es malísimo.

HON. JUEZ:

Con lugar la objeción del Fiscal.

HON. FISCAL:

Ella tiene derecho a pensar.

LIC. SUÁREZ:

Es que tengo derecho a preguntar, por qué piensa?

HON. JUEZ:

Ya se lo ha preguntado, ella tiene derecho a pensar, sobre todo, que el Tribunal quiere hacer constar que la niña, a pesar de los diez y seis años y estar en séptimo grado, demuestra ser una niña de una mentalidad . . . El Tribunal está viendo la testigo y no es una niña de una inteligencia normal para su edad por eso es que el Tribunal tiene que permitir que la niña piense, con lugar la objeción del Fiscal."

Sostiene el apelante que este comentario del juez sentenciador constituyó error pues la prueba demostró que la niña es de inteligencia normal.

■ Nos parece perfectamente natural que la niña se resistiese o pensase antes de describir con todos sus detalles el acto criminal que le imputaba a su padre, especialmente

si se tiene en cuenta que el acusado era su padre y que estaba declarando en su presencia.

No creemos que la manifestación del juez de que la niña no era de una inteligencia normal para su edad constituyó un error perjudicial. *Pueblo* v. *Pabón Almodóvar*, 86 D.P.R. 555–557 (1962).

■ 4.—Llegamos ahora a la cuestión básica levantada por el apelante en relación con la apreciación de prueba. Sostiene que ésta demuestra no tan sólo que (a) la desfloración de la perjudicada fue reciente, de días, implicando que sucedió luego que la perjudicada abandonó el cuarto en que vivía con su padre (el apelante) y su hermano menor, y por lo tanto, que no pudo ser su padre el que la desfloró, sino que también que (b) el apelante, de 85 años de edad, estaba impotente desde unos cuatro años atrás y aunque hubiera podido lograr una erección no hubiera podido mantener una relación sexual. Aunque estas aseveraciones encuentran apoyo en ciertas manifestaciones aisladas de los dos peritos médicos que testificaron, no es menos cierto que no quedaron plenamente establecidas de manera que el jurado que oyó toda la prueba tenía justificación en la prueba para llegar a una conclusión distinta y opuesta a cada una de las dos aseveraciones en cuestión. Apareciendo de la prueba base suficiente para sostener la conclusión inculpatoria a que el jurado en este caso llegó, no debemos intervenir con el juicio que el jurado ejerció de la prueba que desfiló ante el mismo. Un breve análisis de la prueba pertinente nos da la razón. Veamos.

Bajo el párrafo 3 de esta opinión resumimos el testimonio de la perjudicada y del médico que la examinó.

En cuanto a la posible impotencia del apelante, el médico que lo examinó, designado por el tribunal a petición del apelante, testificó que encontró que sus "testículos estaban atróficos en cierto grado, los cordones· espermáticos espirilinos ·están normales . . . demostraba una próstata agran-

dada . . . como tres o cuatro veces más de lo normal." Al pedírsele su opinión sobre la potencia sexual del apelante, contestó que "ni yo ni nadie puede contestar . . . yo dudaría que este hombre tenga erección." Continúa el médico testificando que:

"Este es un asunto completamente subjetivo; hay personas a una edad están impotentes y otras que no; ahora, basándose en experiencia propia y experiencia, no solamente mía sino de personas versadas en este asunto, mi experiencia es que más de un 90 por ciento de personas sobre los 75 años, si tienen alguna erección es exporádica [sic] no son erecciones repetidas ni mantenidas, en otras palabras que puede tener un momento de erección pero que no hay suficiente flujo sanguíneo al pene para mantener la efectividad, o sea, la erección suficiente tiempo para tener una relación sexual. Ahora, se han visto casos en que hay personas que han tenido hijos a los 75 años; ahora, estos son casos aislados categóricamente, son casos que han aparecido en la literatura pero nadie puede asegurar que estos hijos hayan sido producidos por estas personas; a esta edad están casi impotentes casi todos."

Añadió que personas que padecen de la próstata (hipertrofia prostática en este caso) "tienen mucho más dificultad a tener erección debido a que la glándula no está trabajando y es una de las glándulas urogenitales." Testificó que él creía imposible que el apelante pudiese "sostener un acto carnal prolongado por una hora"; que probablemente no podía tener erección para desgarrar un himen ni ahora ni hace cuatro años pero no lo podía asegurar. A preguntas del fiscal testificó que hay personas que llegan a cierta edad y no tienen el impulso sexual pero hay otras que llegan a esa edad y tienen ese impulso; que la edad máxima a que un hombre puede procrear es variable de 65 a 75 años; que no podía decir si al apelante "le faltaba erección en el momento del examen", y que no había dicho que el apelante no pudo tener erección cuatro años atrás; aclaró que había leído de personas que han tenido hijos a los 85 años; que así aparece

de la literatura; no puede afirmarlo, pero se acepta. A preguntas de la defensa testificó que en su opinión, cree que una persona de las condiciones reveladas por el examen que le hizo al apelante "no podía tener energía para hacer un coito completo"; que ésta era una opinión personal y profesional; que no podía asegurar que el apelante "tenía efectividad, o sea, erección el día del examen ni cuatro años atrás."

El anterior testimonio del urólogo que examinó al apelante demuestra que al perito no le fue posible dar una opinión categórica sobre la potencia sexual del apelante. Como indicó, las circunstancias sobre esta cuestión varían mucho de persona a persona, pues estaba de acuerdo que "el aspecto sexual mucho tiene que ver con el aspecto mental aparte del biológico." En resumen, aunque el perito se inclinaba a creer que el apelante estuviera impotente durante los últimos cuatro años no expresa una opinión categórica al efecto. Por lo tanto, el dictamen inculpatorio del jurado no estuvo falto de base en esta prueba.

*Se confirmará la sentencia dictada en este caso por el Tribunal Superior, Sala de San Juan, en 22 de septiembre de 1966.*

El Juez Presidente Señor Negrón Fernández no intervino. El Juez Asociado Señor Santana Becerra emitió voto en concurrencia en el cual concurre el Juez Asociado Señor Blanco Lugo. El Juez Asociado Señor Dávila disintió.

—O—

Voto en concurrencia del Juez Asociado Señor Santana Becerra

San Juan, Puerto Rico, de 6 de junio de 1968

Al concurrir en la decisión de este caso, no expreso opinión ahora sobre si es necesario o no, en incesto, la corrobora-

ción de la declaración de la mujer cuando ésta está en actitud de consentir.

El Juez Asociado Señor Blanco Lugo concurre en este voto.