EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* SEBAS-
TIÁN ROMERO CUESTA, acusado y apelante.

*Número:* CR-72-96    *Resuelto:* 14 de mayo de 1973

*Yamil Galib Frangie,* abogado del apelante; *J. F. Rodríguez Rivera, Procurador General Interino,* y *Lady Alfonso de Cumpiano, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR CADILLA GINORIO emitió la opinión del Tribunal.

Al apelante Sebastián Romero Cuesta se le acusó([1]) por el fiscal por una infracción al Art. 260 del Código Penal de Puerto Rico (33 L.P.R.A. sec. 966) en su segundo párrafo.([2])

La vista del caso se celebró en el Tribunal Superior, Sala de Mayagüez, ante jurado. La prueba de cargo consistió del testimonio de Iván Fagundo Ghigliotty, de la perjudicada y

---

([1]) La acusación leía así:

"El referido acusado, Sebastián Romero Cuesta conocido por BACHAN, allá en o por uno de los días del mes de octubre de 1969 y en Cabo Rojo, Puerto Rico que forma parte de la jurisdicción de este Tribunal, ilegal, voluntaria, criminal y maliciosamente cometió actos de impudicia y lascivia, fuera de los que constituyeren otros delitos previstos en el Código Penal de Puerto Rico, con una niña menor de catorce (14) años de edad, S.I.R.A., con el cuerpo de dicha niña, frontando y rozando con el pene las partes pudendas de la referida niña con la intención de incitar y satisfacer su impudicia, pasiones y deseos sexuales y de despertar e incitar la impudicia y deseos sexuales de dicha niña." (En la acusación se expresa el nombre completo de la menor.)

([2]) "Toda persona que maliciosamente cometiere cualquier acto impúdico o lascivo, fuera de los que constituyeren otros delitos previstos en el Código Penal, con un niño menor de catorce años de edad, o con el cuerpo de dicho niño o cualquier parte o miembro del mismo, con la intención de despertar, incitar o satisfacer la impudicia, pasiones o deseos sexuales de dicha persona o de dicho niño, será culpable de delito grave y recluído en la penitenciaría por un período que no excederá de cinco años. Código Penal, 1937, Artículo 260."

de José Antonio Andújar Graniela y como prueba documental la verificación certificada de Acta de Nacimiento de la perjudicada, de donde se concluye que ésta tenía 8 años el 31 de octubre de 1969, fecha en que se alegó se cometió el delito. El otro testigo del fiscal, lo era la madre de la perjudicada, que no fue utilizada y fue puesta a disposición de la defensa. Ésta presentó como prueba la denuncia formulada contra el acusado y como prueba ofrecida y no admitida, el certificado de nacimiento del acusado.

El jurado encontró culpable al acusado del delito que se le imputó y el tribunal lo sentenció a cumplir la pena correspondiente conforme a ley.

En la apelación se imputa como primer error el que el tribunal comentó en sus instrucciones al jurado el hecho de que el acusado no hubiese testificado y al calificar tal circunstancia como una omisión.

El ilustrado magistrado que presidió el juicio (Hon. Archilla Guenard) dió al jurado la siguiente instrucción:

"Por un precepto expreso de la ley el acusado puede o no declarar, según él así lo desee. Es un derecho que él tiene que la ley le da.

En este caso, como ustedes han visto el acusado no ha declarado. El hecho de no hacerlo no ha de considerarse como circunstancia que lo incrimine, pues el fiscal está en la obligación de establecer su culpabilidad más allá de una duda razonable, *prescindiendo de tal omisión.* (³) " (Énfasis suplido.)

En primer lugar sostiene el apelante que aun cuando la referida instrucción se ha venido transmitiendo rutinariamente a los jurados en todas las causas criminales, la misma equivale a llamar la atención del jurado sobre el hecho de que el acusado ha guardado silencio, no ha declarado; y en segundo lugar que al calificar ese hecho como una "omisión", y al decir que el fiscal viene obligado a probar la culpabilidad del acusado más allá de duda razonable "prescindiendo de tal

--------

(³) T.E. pág. 157.

omisión" intima que de no haber "omitido" el acusado su declaración ello hubiese aliviado la carga del fiscal.

Sostiene además el apelante, en su alegato, que la práctica en muchas cortes de la jurisdicción federal es no dar dicha instrucción sobre el silencio del acusado a menos que la defensa expresamente lo solicite; y dichos tribunales consideran que el trasmitir dicha instrucción *sua sponte* equivale a llamar la atención del jurado al final del proceso, a un hecho al cual a lo mejor no le había dado importancia el jurado y para el cual ni tan siquiera requería explicación o aclaración alguna. (⁴)

Mantiene que la instrucción señalada como error es una que a la luz de las disposiciones de la Sec. 11 de la Carta de Derechos de nuestra Constitución no debe ser impuesta a ningún acusado que no lo solicite expresamente y que, en todo caso, nunca debiera calificarse como "omisión" el ejercicio por el acusado de un derecho constitucional de tanto rango como el que le protege contra la propia incriminación; y que el vocablo "omisión" conlleva corriente y correctamente la connotación de dejar de hacer una cosa conveniente o necesaria, algo así como una falta o descuido; y hasta puede indicar grave falta moral, como cuando hablamos, por ejemplo, de "pecado de omisión" o de "crimen por omisión"; y sostiene que fundándose en los principios de justicia debe rechazarse toda instrucción impuesta a un acusado que no ha solicitado y que tiene el efecto no ya tan solo de señalar el hecho de que no ha declarado en su juicio, sino que califica el ejercicio de ese derecho suyo como una "omisión".

■ Al terminar de dar las instrucciones, en ausencia del jurado, el magistrado invitó a las partes a consignar en el récord cualquier excepción que pudieran tener a las instrucciones trasmitidas al jurado. El Lcdo. Galib contestó: "La defensa ninguna, Vuesto Honor." No se solicitaron instruc-

---

(⁴) No se cita jurisprudencia al efecto.

ciones adicionales. Esto sería suficiente para disponer del alegado error adversamente al apelante. En *Pueblo* v. *Torres Rolón*, 99 D.P.R. 970 (1971) (Rigau), resolvimos que es tardío un planteamiento en apelación impugnando las instrucciones del juez al jurado cuando la defensa no objeta dichas instrucciones ni solicita instrucciones adicionales. Igual doctrina sostuvimos en *Pueblo* v. *Del Valle*, 91 D.P.R. 174 (1964) (Pérez Pimentel), donde resolvimos, además, que si no se hace objeción ni aun de carácter general a las trasmitidas, se renuncia a cualesquiera errores en ellas que no lesionen sus derechos fundamentales.

En primer lugar debemos decir que esa misma cuestión fue resuelta adversamente al apelante en una Sentencia que recientemente dictamos en el caso de *El Pueblo de Puerto Rico* v. *Mario Moreu Pérez*, criminal número 72-102, sobre Ley de Narcóticos, en apelación procedente del Tribunal Superior, Sala de Mayagüez, donde se dió una instrucción idéntica a la aquí envuelta y por el mismo magistrado que la dió en el presente caso, y en el cual se levantaron las mismas objeciones, por el mismo ilustrado abogado que representa al apelante en el presente caso. Dijimos allí:

"Aparte de que el apelante no objetó la instrucción, lo cierto es que la instrucción no tiene el efecto que el apelante apunta. Parte de una premisa falsa al tratar de establecer una relación entre la instrucción impartida y el comentar el silencio del acusado. Ver *Pueblo v. Martínez Guerra, 98 DPR, 682 (1970)*."

Pero aun yendo al fondo de la instrucción impugnada, consideramos que la misma no lesiona derechos fundamentales del acusado, aun cuando se haya calificado el acto del acusado de no declarar con el vocablo de "omisión".

Es correcta la alegación de la distinguida representación legal del apelante de que el vocablo o palabra "omisión" conlleva corrientemente la connotación de dejar de hacer una cosa conveniente o necesaria, algo así como una falta de descuido y hasta puede indicar grave falta moral, como

cuando expresamos por ejemplo "pecado de omisión". El Diccionario de la Lengua Española de la Real Academia Española (19na. ed., 1970, pág. 942, en sus acepciones segunda, tercera y cuarta define dicho vocablo así: "Omisión: . . . . .; (2) falta por haber dejado de hacer algo necesario o conveniente en la ejecución de una cosa o por no haberla ejecutado; (3) flojedad o descuido del que está encargado de un asunto; (4) pecado de omisión." Igualmente el Diccionario General Ilustrado de la Lengua Española (Vox), edit. Bibliograf, S. A. Barcelona, 1970, pág. 1188 define dicha palabra, en su acepción tercera y cuarta, así: "Omisión: . . . . .; . . . . .; (3) falta por haber omitido la ejecución en todo o en parte de una cosa; (4) descuido del que está encargado de una cosa"; pero el uso de la misma no puede interpretarse, como lo hace el apelante, en el sentido de que la misma equivale a llamar la atención del jurado sobre el hecho de que el acusado ha guardado silencio y de que intima o sugiere al jurado que de no haber omitido el acusado, o sea, de haber el acusado declarado, ello hubiese aliviado la carga del fiscal. Por el contrario, de dicha instrucción, leyendo su contexto, se comprende diáfanamente que el tribunal tuvo la intención de recordarle, que debían tener presente, y no olvidarlo en sus deliberaciones, que el acusado tenía el derecho de declarar o no, según lo deseare, por mandato expreso de la ley; pero que recordaran y tuvieran presente siempre que el hecho de no haber declarado el acusado en este caso, no debía ni podía considerarse como que ello tendiera a aceptar culpabilidad y/o incriminarse; y que recordaran en todo momento, en sus deliberaciones, que a pesar de no haber declarado el acusado, el fiscal venía obligado de probarles a los jurados su culpabilidad más allá de una duda razonable, sin tener en cuenta el silencio del acusado; y el calificar ese silencio como una omisión, no desvirtúa de ninguna manera el propósito de la instrucción; aunque mejor hubiera sido que el magistrado no hubiera usado la palabra omisión y que la instrucción, en vez

de decir al final: "... prescindiendo de tal omisión" hubiera dicho "... *prescindiendo del hecho de que el acusado no ha declarado, en el ejercicio de su derecho a no hacerlo.* (⁵) Queremos establecer aquí la pauta de que en el futuro los magistrados deben abstenerse de calificar como "omisión", el derecho del acusado a no declarar, en los casos en que éste ejercite ese derecho y no declare.

Tampoco creemos que debe establecerse la doctrina de que el tribunal no dé instrucciones sobre el derecho del acusado a guardar silencio, si éste no lo solicita, por el fundamento alegado por el apelante, de que la instrucción equivale a llamarle la atención al jurado sobre el hecho de que el acusado ha guardado silencio. Por el contrario, esa instrucción es necesaria, sana y prudente, como un recordatorio a los jurados que tengan siempre presente y no olviden en sus deliberaciones el alcance de ese derecho que tiene el acusado y como, porque lo ejercite, no deben considerar que lo incriminó y que se pueda tener la más mínima idea de que está aceptando culpabilidad en el caso.

El apelante, en apoyo de sus razonamientos, hace referencia a una expresión del Sr. Juez Black, del Tribunal Supremo de los Estados Unidos en el caso de *Grunewald, etc.*, (⁶) v. *United States*, 353 U.S. 391; 1 L.Ed.2d 931; 77 S.Ct. 963. La opinión del Tribunal fue dada por el Sr. Juez Harland. El Sr. Juez Black concurrió por opinión separada, con la opinión del Sr. Juez Harland. Fue en ésta que él expresó lo siguiente:

"No se me ocurre pensar en ninguna circunstancia especial que pueda justificar el uso de un privilegio constitucional para desacreditar o declarar culpable a uno que lo invoca. La eficacia de los privilegios constitucionales se destruye grandemente si se penaliza a las personas por invocarlos. Parece particularmente incongruente e indefendible por las cortes, las cuales existen y

---

(⁵) O cualquiera fraseología que cada Juez considere apropiada y que no sea inconsistente a lo aquí resuelto.

(⁶) Hay otros dos peticionarios en el caso: Halperin y Bolich.

actúan solamente bajo la Constitución, el llegar a inferencias de falta de honestidad de la invocación de un privilegio conceptuado valioso y salvaguardado en la Constitución."

Suscribimos línea por línea las referidas manifestaciones del Sr. Juez Black; pero los hechos y la cuestión envuelta en dicho caso eran completamente diferentes a la situación del presente caso. El peticionario Grunewald fue convicto de conspiración para defraudar a los Estados Unidos en relación con ciertos asuntos contributivos. Halperin, uno de los alegados conspiradores convictos fue citado por un Gran Jurado de Brooklyn que estaba investigando la corrupción en el Negociado de Rentas Internas. El Gran Jurado había recibido testimonio de dos contribuyentes envueltos en el caso, que conectaba al coacusado Halperin con *un grupo o círculo que se dedicaba* a hacer arreglos contributivos por medios fraudulentos, soborno, corrupción e influencia impropia (*tax-fixing ring*.) Fue sometido ante el Gran Jurado a una serie de preguntas que Halperin declinó contestar amparándose en que las contestaciones tenderían a incriminarle y que la Quinta Enmienda, por tanto, le daba el derecho a no contestar las preguntas. El testigo insistentemente alegó ante el Gran Jurado que él era completamente inocente, y que invocaba la Quinta Enmienda solamente por el consejo que le había dado su abogado de que si él contestaba preguntas podría proporcionar o suministrar evidencia que podría ser usada contra él, particularmente cuando él no estaba representado por abogado allí y no podía repreguntar a los testigos ante el Gran Jurado. Posteriormente, cuando el Gobierno repreguntó a Halperin durante el juicio en su fondo, algunas de las preguntas que se le habían hecho ante el Gran Jurado, se hicieron nuevamente. El contestó cada pregunta de un modo consistente con su inocencia. Se le permitió entonces al Gobierno, bajo objeción, el traer en el contrainterrogatorio que Halperin había invocado su privilegio bajo la Quinta Enmienda de no contestar ante el Gran Jurado esas mismas preguntas. Luego,

en su informe al jurado, el juez sentenciador les instruyó que la invocación por Halperin de la Quinta Enmienda, para no contestar esas preguntas podían ser tomadas en consideración solamente como reflejándose en su credibilidad, y que ninguna inferencia podía sacarse de ese hecho en cuanto a Halperin ni ninguno otro de los co-acusados. El Tribunal Supremo de Estados Unidos expresa que naturalmente, es una regla elemental de evidencia que manifestaciones anteriores pueden usarse para impugnar (*impeach*) la credibilidad de un acusado o de un testigo ordinario; pero que eso sólo puede hacerse si el juez está satisfecho que las manifestaciones anteriores son de hecho inconsistentes. Establece que el punto fundamental en el caso era simplemente, dentro de las circunstancias del caso, si el tribunal que vio el caso, erró al sostener que la invocación por Halperin de la Quinta Enmienda ante el Gran Jurado envolvía tal inconsistencia con cualquier parte de su testimonio durante el juicio que permitiera su uso contra él para fines de impugnar su credibilidad. El Tribunal Supremo —al pasar sobre la cuestión (*issue*) de credibilidad—considera evidente que la invocación de la Quinta Enmienda por Halperin ante el Gran Jurado, en contestación a las preguntas que él contestó en el juicio, era totalmente consistente con su inocencia, ya que si hubiera contestado las preguntas ante el Gran Jurado de la misma manera en que subsiguientemente las contestó en el juicio, ello hubiera provisto al Gobierno con evidencia incriminatoria de su propia boca. Sostiene el Tribunal que la Quinta Enmienda fue invocada ante el Gran Jurado, donde Halperin fue obligado a comparecer y no era un testigo voluntario; donde no estaba representado por abogado; donde no podía citar testigos; y donde no tenía oportunidad a repreguntar los testigos que declararon contra él; y que los hombres inocentes están más inclinados a alegar el privilegio en procedimientos secretos, donde ellos declaran sin el consejo de abogado y sin oportunidad de contrainterrogar, que en los procedimientos abiertos en

Corte, donde el contrainterrogatorio y el procedimiento judicialmente supervisado les provee de salvaguardia para el establecimiento de la totalidad de la verdad, contrario a la posibilidad de establecer una verdad a medias o meramente parcial. Resuelve el Tribunal, como lo más importante, que no se puede considerar la alegación de Halperin sobre la Quinta Enmienda como inconsistente con su testimonio posterior durante el juicio debido a la naturaleza del procedimiento particular ante el Gran Jurado, porque cuando fue preguntado ante éste evidentemente él era ya considerado como un acusado potencial. Consideró que se había cometido error perjudicial al permitir el juez que contrainterrogaran a Halperin sobre su invocación de la Quinta Enmienda ante el Gran Jurado, revocó el caso, y ordenó devolverlo para que se le celebrara juicio de nuevo. Fue entonces que, en opinión separada, con la cual concurren el Sr. Juez Presidente y los Sres. Douglas y Brennan, el Sr. Juez Black hizo las manifestaciones que arriba hemos copiado, expresando que concurre, pero con una excepción, a saber: que no descansa su conclusión exclusivamente en las circunstancias especiales del caso, sino que no puede pensar de ninguna circunstancia que justifique el uso de un privilegio constitucional para desacreditar o condenar a una persona que lo invoca.

Como segundo error se alega, que "erró el Hon. Tribunal a quo al instruir al jurado con respecto a alegados hechos anteriores supuestamente cometidos por el acusado."

■ En el caso se trajo prueba de hechos cometidos el 2 de octubre de 1969 para demostrar ". . . con qué intención o con qué malicia él tocaba esa niña en la forma que ella describe y que lo describe otro testigo y con qué intención o deseo él besaba esa niña por el cuello y el rostro. Para esos solos fines se ha permitido esa prueba, pero los hechos que ustedes habrán de resolver si fueron o no cometidos por el acusado y si habiéndolos cometido constituyó o no el delito que se le

imputa en esta acusación, son los del 31 de octubre." (T.E. pág. 149.)

En el caso de *Pueblo* v. *Firpi Negro*, 96 D.P.R. 215 (1968), donde la acusación era por el delito de incesto se permitió prueba de hechos acontecidos hasta cuatro años antes del hecho por el cual se le acusaba "porque los varios actos estaban tan relacionados entre sí que los primeros actos tendían a probar el delito imputado." Cuando el Sr. Presidente del jurado solicitó instrucciones adicionales sobre este aspecto, el tribunal fue claro al expresar que los actos por los cuales lo tenían que hallar culpable eran los del 31 de octubre. (T.E. pág. 169.) Entendemos además que los otros actos quedaron debidamente probados.

El tercer apuntamiento del apelante es el siguiente:

"Erró el Hon. Tribunal a quo al denegar la admisión en evidencia del certificado de nacimiento del acusado con vista a las circunstancias todas del caso."

■ Este error no se cometió, pues aun cuando hubiera tenido que admitir el tribunal dicho certificado en evidencia, no hay duda de que el jurado tuvo muy en mente la edad del acusado, tan es así que al rendir su veredicto, solicitó del tribunal "alguna clemencia en consideración a su edad al sentenciarlo."

Es de notar que el acusado estuvo presente durante la vista del caso, y el jurado observó que se trataba de un hombre de avanzada edad. Además, los hechos específicos[7] sobre los que desfiló prueba que sucedieron el 31 de octubre de 1969, podían ser cometidos por un hombre de 77 años. La prueba de su edad no hubiera rebatido el hecho cometido.

Pasaremos a discutir los últimos dos erroes conjuntamente, según lo hizo el acusado y el Procurador, que son:

---

[7] La prueba consistió en que ese día le tocó el pecho en ambos lados y la besó en el cuello y en la mejilla, también en ambos lados, varias veces. (T.E. págs. 52–54.)

IV "Erró el Hon. Tribunal a quo al no decretar la absolución al amparo de la Regla 135 de las de Procedimiento Criminal vigentes."

V "La sentencia apelada es contraria a derecho o es el resultado de manifiesto error en la apreciación de la prueba."

No se cometió ni el cuarto ni el quinto error imputádole al tribunal a quo, pues la prueba del fiscal fue suficiente para sostener una convicción por infracción al Art. 260 del Código Penal. Tanto la niña, como el testigo Iván Fagundo Ghigliotty, declararon que el 31 de octubre de 1969, el acusado traía a la niña de la mano y al llegar detrás de una guagua la tocó en ambos lados del pecho y la besó repetidas veces en las mejillas y alrededor del cuello. Luego, quedaron probados los requisitos esenciales para una convicción por el delito que se le imputa, a saber: se cometió un acto impúdico o lascivo con la niña, que en ese momento era menor de catorce años (específicamente, contaba con 8 años de edad) y ello se realizó con la intención de despertar, incitar o satisfacer la impudicia, pasiones o deseos sexuales del acusado o la niña. Dicha intención quedó probada a base de hechos impúdicos y de lascivia anteriores al día de los hechos y relatados por la niña y otro testigo.

Alega el acusado que los actos específicos alegados en la acusación en cuanto a que "el acusado frotase su pene contra las partes pudendas de ella", no fueron probados. Tiene razón el acusado, esos hechos específicos no fueron probados como que sucedieron el día de los hechos; pero fueron probados los hechos antes relatados que también constituyen el delito. A esos efectos la Regla 38(d) de las de Procedimiento Criminal, en parte, dice: "La incongruencia o desacuerdo entre las alegaciones y la prueba no será fundamento para la absolución del acusado." El delito fue probado y entendemos que ese error no afectó los derechos sustanciales del acusado. Abundando sobre ese tema, C. Fricke en *California Criminal Procedure*, pág. 398 (6ta. ed. 1962) nos dice:

"Una variación inmaterial (*immaterial variance*) es una en la cual existe una diferencia entre las alegaciones de la acusación o denuncia pero dicha diferencia no prueba un delito distinto ([8]) que el imputado, siendo la variación meramente en cuanto a una materia de detalle que .no puede resultar en un perjuicio sustancial al derecho del acusado."

*Se confirma la sentencia dictada por el Tribunal Superior, Sala de Mayagüez.*

---

([8]) Los ·hechos establecidos en el presente caso probaron la misma ofensa o delito imputados en la acusación, o sea, una infracción al Art. 260 del Código Penal.