EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN ARCADIO BONILLA VÁZQUEZ, acusado y apelante.

*Número:* CR-69-29        *Resuelto:* 17 de marzo de 1970

*Julio García Antique,* abogado del apelante; *Gilberto Gierbolini, Procurador General,* y *J. F. Rodríguez Rivera, Subprocurador General,* abogados de El Pueblo.

PER CURIAM: Juan Arcadio Bonilla Vázquez fue acusado y convicto por tribunal de derecho del delito de violación (33 L.P.R.A. sec. 961). Fue sentenciado a cumplir la pena de dos a 10 años de presidio.

Apunta en apelación que incidió el tribunal de instancia al permitir los testimonios de un policía y un detective sobre lo que les relató la perjudicada, por no ser parte del *res gestae.* (¹)

La perjudicada, mujer casada con nueve hijos, testificó que el día 28 de agosto de 1968 salía de la fonda donde trabajaba en Utuado, como a las ocho de la noche, para volver a su casa; que al pasar por la Escuela Jesús López el apelante, quien estaba mal vestido con camisa amarrada con un nudo y sin botones, la agarró, le puso una mano en la boca y otra por la garganta, la arrastró detrá del comedor de la escuela, le quitó la ropa interior y la ultrajó; que luego le dijo que era prófugo y que si lo denunciaba la mataba; que ella salió corriendo hasta su casa gritando "un hombre me va a matar"; que al llegar sintió que su marido la cogió "la gente la tenía agarrada y yo, gritaba 'un hombre me va a matar' . . . yo no puedo irlo a buscar porque él dijo que me mataba si lo denunciaba"; que sufrió lesiones consistentes de arañazos, chichones, bofetadas, golpes y botaba sangre por la boca; que a insistencias de la gente fue al cuartel de la policía esa misma noche y le dijo al policía Delgado que "uno abusó de mí no ve como estoy toda desbaratada."

El marido de la perjudicada testificó que al oir los gritos de la perjudicada y preguntarle qué le pasaba, ella le dijo "un hombre me quiso matar" al llegar "nerviosa con un

---

(¹)La Regla 154 de las de Procedimiento Criminal dispone que en un proceso por violación no podrá declararse convicto al acusado por la sola declaración de la mujer agraviada a menos que tal declaración se corrobore con alguna otra prueba que por sí misma . . . *tienda a establecer la relación del acusado con la comisión del delito.* (Énfasis nuestro.)

ataque, temblando y gritando, botando sangre por la boca y toda magullada. . . ."

El policía Delgado testificó que la perjudicada se personó al cuartel como a las ocho y cuarto de la noche de los hechos "llorando en estado nervioso, mostraba rasguños en el cuello, sangraba por la boca entones al preguntarle qué le pasaba me dijo que un individuo bajito con camisa colorada había abusado de ella. . . ."

El detective Flavio Texidor García testificó que a los tres días de los hechos vio a la perjudicada cuando llegó nerviosa al cuartel "diciéndole al policía de retén que el hombre que la había atacado ella lo vio . . . en el barrio La Granja. . . . y yo le pregunté qué le había hecho a ella y ella me dijo que había abusado de ella y que había hecho con ella lo que a él le dio la gana . . . ."

1.—El juez de instancia hizo caso omiso de la objeción al efecto de que no hubo corroboración. Dictaminó, correctamente a nuestro juicio, que "cierto es que en la primera oportunidad cuando el marido la interroga en ese estado de excitación lo que dice es que quisieron matarla, cuando vuelve donde el policía, *en el mismo estado de excitación le dice que abusaron de ella,* yo entiendo que aun cuando no lo dijo en la primera oportunidad a su marido y sí al policía *pero todavía bajo el influjo de esa conmoción emocional y física tal como lo describe ella* . . . es admisible y es suficiente corroboración. . . ." *Pueblo* v. *Aponte*, 77 D.P.R. 917 (1955); *Pueblo* v. *Dueño Maysonet*, 94 D.P.R. 706, 713 (1967); *Pueblo* v. *Díaz Ríos*, 95 D.P.R. 361, 367 (1967); *Pueblo* v. *de Jesús Cruz*, 94 D.P.R. 180, 187 (1967); *Pueblo* v. *Arcadio Bonilla Vázquez*, Sentencia de 21 de octubre de 1969.

2.—No hubo prueba que corroborara el acto sexual ni que conectara al acusado con la comisión del delito.

Al llegar al cuartel la primera vez, la perjudicada sólo dijo que el individuo que "abusó" de ella era bajito con ca-

misa colorada. La perjudicada testificó que a la semana siguiente de los hechos vio al apelante pasar por la calle más abajo de su casa; que se quedó fría y "viré para el Cuartel a dar cuenta;" que entonces dos policías que no conocía fueron con ella a casa del apelante cuya dirección la averiguaron a través de unos nenes. En contrainterrogatorio dijo que había identificado al apelante cuando fue al cuartel al extremo que otra señora allí presente le dijo que "las descripciones que yo daba son las mismas del hombre que quiso abusar de la hija de ella"; que el detective le dijo "que había pasado un caso y que la persona era igual a la que yo identificaba"; que "la descripción es la misma que usted me dio"; que "estaban buscando una persona que, la identificación que yo le daba era la misma."

El detective Texidor dijo que cuando la perjudicada volvió al cuartel a los tres días a informar que había visto al apelante, el testigo fue al día siguiente a buscar al apelante a casa de su mamá pero no lo consiguió; la mamá lo trajo al cuartel al día siguiente y llamada la perjudicada vino al cuartel "Tan pronto lo vio, en forma nerviosa dijo esa misma es."

La defensa no objetó el testimonio de Texidor ni de Delgado. Al contrario, los contrainterrogó extensamente. Es al terminarse la vista del caso que la defensa informa al juez sentenciador "que entendemos de que no hay corroboración tal y como exige la ley . . . porque . . . ninguno de los testigos del Pueblo ha declarado que esta señora dijera que ha sido violada . . . ."

En *Pueblo* v. *Arroyo Agosto*, 93 D.P.R. 445 (1966), se trataba de una convicción por el delito de ataque para cometer violación. La defensa fue la coartada. Dijimos que la referida Regla 154 es de aplicación a estos casos; que por lo tanto, la descripción que dio la perjudicada, inmediatamente después del atentado del individuo que trató de ultrajarla la de *un hombre de color, tosco y fuerte* sin que el récord demos-

trara que esa descripción correspondía al apelante en efecto no relacionó a éste con la comisión del delito de que se le acusó.

En el caso ante nos, la descripción que la perjudicada dio al policía Delgado al llegar al cuartel de la policía minutos después de la ocurrencia de su ultraje, del autor de tal acto, fue que "era bajito con camisa colorada." En su testimonio en contrainterrogatorio, la perjudicada no especificó qué descripción más precisa dio ni cuándo la dio ni a quién. El policía y el detective que testificaron no hicieron referencia a descripción otra alguna que la perjudicada les diese que relacionase al apelante con la comisión del delito en este caso. Por el contrario, el detective Texidor testificó que la identificación del apelante como el autor del delito se hizo por la perjudicada en el cuartel al quinto día de la comisión del delito, bajo circunstancias que no permiten concluir que formó parte del *res gestae.*

En vista de lo expuesto, resulta innecesario considerar los demás apuntamientos del apelante.

Por lo tanto, *debe revocarse la sentencia dictada en este caso en 7 de junio de 1969 por el Tribunal Superior, Sala de Arecibo y dictarse otra absolviendo al apelante.*

El Señor Juez Presidente y los Jueces Asociados Señores Hernández Matos y Blanco Lugo no intervinieron. El Señor Juez Santana Becerra disintió sin opinión.