EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* CARLOS M. CABRERA LOZADA, acusado y apelante.

*Número:* CR-70-66      *Resuelto:* 5 de marzo de 1971

*Yamil Galib Frangie,* abogado del apelante; *Gilberto Gierbolini, Procurador General, y Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: Carlos Cabrera Lozada fue acusado y convicto del delito de violación técnica consistente en que allá para el día 10 de abril de 1965 tuvo contacto carnal con una joven de quince años de edad, que en aquel momento estaba incapacitada por defecto mental a los fines de consentir. Fue condenado a cumplir de tres a siete años de presidio.

En el juicio testificaron (1) la perjudicada con respecto al contacto carnal que el apelante tuvo con ella, las circuns-

tancias bajo las cuales se realizó el acto imputado, otras actuaciones suyas y su labor escolar; (2) el neurólogo, Dr. Luis Guzmán López, a los efectos de que la perjudicada padece de un síndrome cerebral crónico, condición que produce una incapacidad para razonar normalmente por lo que, a su juicio, no estaba capacitada para consentir a un acto sexual; (3) el Dr. Carlos Alemañy sobre el examen de la perjudicada después de la ocurrencia de los hechos; (4) la Sra. Erania Espaillat de Félix, sobre su conversación con la perjudicada quien le habló del acto carnal que el apelante realizó en ella; (5) Elisabeth Mangual sobre una admisión que el apelante le hizo de que había vivido con la perjudicada; (6) el hermano menor de la perjudicada y (7) el Dr. Paul N. Senior, sicólogo clínico, quien realizó dos pruebas en la perjudicada, una de coordinación visomotora la cual demuestra cómo coordina y cómo capta la realidad la persona examinada y la otra que mide su inteligencia, en vista de las cuales, además de su entrevista con la perjudicada, concluyó este médico que la perjudicada "está funcionando a nivel de deficiente mental, lo que llamamos imbécil" no obstante poder aprender a leer y escribir y a tomar dictado como aparece de una libreta de la perjudicada que se le mostró.

En apelación, el apelante nos señala una serie de apuntamientos que consideramos a continuación. A nuestro juicio no se justifica que intervengamos con el dictamen en este caso.

1. Apunta que el tribunal de instancia incidió al permitir que al Dr. Guzmán se le preguntase y éste opinase sobre si la perjudicada estaba incapacitada legalmente para consentir al acto sexual.

Arguye que el doctor no estaba instruido con respecto a lo que entiende por consentimiento legal; que se trata de un neurólogo que nunca le hizo a la perjudicada prueba alguna de su personalidad por no ser ese su campo ni le hizo preguntas sobre el acto sexual y sus implicaciones.

El apuntamiento es inmeritorio. Si bien es cierto que el fiscal usó la expresión "legalmente", la omitió al repetir la pregunta antes que el perito contestase.

■ Este perito, debidamente cualificado como neurólogo, testificó que a base del historial y de su examen de la perjudicada, ésta padecía de un síndrome cerebral crónico acompañado de un desorden cerebral convulsivo; "que estas condiciones producen en estos niños una incapacidad para ellos razonar normalmente. . . ." Fue a base de una exposición detallada de esta situación que el perito luego concluyó que la perjudicada estaba incapacitada para consentir al acto sexual.

2–3. Arguye que constituyó error el permitir que la testigo Erania Espaillat de Félix declarase sobre alegadas manifestaciones que le hizo la perjudicada y al decidir que tales manifestaciones formaban parte del *res gestae* y como tales eran admisibles en evidencia.

■ Es cierto que la Sra. Espaillat fue la segunda persona a quien la perjudicada le relató el acto carnal que en su persona realizó el apelante. La otra fue la autora de sus días quien estaba imposibilitada de testificar en contra del apelante pues éste era su esposo. Tales manifestaciones fueron hechas poco después de los hechos por una incapacitada mental, mecánicamente, sin coacción o presión alguna. No fue producto de una reflexión calculada con el propósito de perjudicar al apelante. Debido a que estaba impedida de reflexionar, la perjudicada más bien repetía a solicitud cualquier experiencia habida. Concluimos que éstas eran circunstancias especiales que justificaban admitir el testimonio corroborativo de la Sra. Espaillat. *Pueblo* v. *Bonilla Vázquez,* 98 D.P.R. 834, 836 (1970); *Pueblo* v. *Echevarría Rivera,* 96 D.P.R. 159, 160 (1968); *Pueblo* v. *Aponte,* 77 D.P.R. 917, 920 (1955).

■ 4–5–6–7. Señala que incidió el tribunal de instancia al proceder, en el turno de instrucciones al jurado, a analizar

y enfrentar a la prueba de cargo con los elementos a probar en casos de esta naturaleza; al referirse en sus instrucciones a prueba que no desfiló; y al referirse en sus instrucciones a extremos de la prueba que tienden a establecer los elementos del delito imputado no obstante la estipulación de las partes de que no se hiciera un resumen de la evidencia, creando así ante el jurado una situación de desbalance en contra de los mejores intereses del acusado. Específicamente impugna la siguiente parte de las instrucciones:

(a) "LA CORTE: .    .    .    .    .    .    .    .
. . . Ahora, ¿qué prueba se les ha presentado a ustedes aquí para tender a corroborar la declaración de la perjudicada? Se presentó aquí una señora de apellido Espaillat Félix, dueña de una casa de albergue de niños, adonde la madre de la niña, la esposa del acusado, llevó la niña el día once de abril, o sea *el día siguiente de la comisión de los hechos,* durante las horas de la tarde, para tratar de albergarla allí *por razón de lo que le había sucedido con el acusado, lo que le había sucedido, y entonces explica la nena lo que le había pasado* . . . ." (Énfasis en el original.)

Arguye el apelante que las frases subrayadas dan por sentado que los hechos se cometieron; que en ninguna parte de la prueba aparece que la esposa del apelante llevó a la perjudicada a casa de la Sra. Espaillat para que obtuviese albergue allí.

No creemos que las frases subrayadas causaren la impresión de dar el tribunal por sentado que los hechos se cometieron cuando a través de las instrucciones en general se hizo claro al jurado que ellos eran los únicos jueces de los hechos; que venían obligados a considerar y pesar toda la prueba y a determinar si le daban o no crédito a todo o parte del testimonio de cada testigo. Testificó la Sra. Espaillat que la madre de la perjudicada le preguntó "Si estaba a mi alcance dar algún albergue a esa niña en mi institución."

(b) La segunda parte impugnada de las instrucciones hace referencia al testimonio de la Sra. Mangual y Rivera con respecto a la admisión que le hizo el apelante de que había vivido con la perjudicada. Arguye el apelante que no se hizo referencia a lo declarado en contrainterrogatorio por esa testigo sobre el hecho de que era enemiga del apelante porque había tenido un pleito en la O.P.A. y que le había dicho una vez al apelante que si le daba $500 lo ayudaba. Además, apunta el apelante que dicha señora testificó que el apelante "le pidió que le ayudara en el caso" pero no aparece que esto fuera a los dos días de haber firmado ella una declaración.

La referencia al testimonio de la Sra. Mangual se hizo como otro ejemplo de prueba de corroboración. Aunque convenimos que hubiera sido preferible haber hecho alguna referencia a su testimonio de que era enemiga del apelante, tal omisión, a la luz del conjunto de las instrucciones no fue sustancialmente perjudicial al apelante como para justificar un nuevo juicio. El pedido de ayuda hecho por el apelante a la testigo obviamente se hizo mientras conversaban cuando ella lo fue a ver.

Asimismo objeta la siguiente parte de las instrucciones:

"Ahora, sí hay pruebas que tienden a establecer los demás elementos del delito. Hay prueba presentada ante la consideración de ustedes . . . . En este caso el punto en controversia es el estado mental de la niña que, de acuerdo con el testimonio de estos peritos, era un estado mental que equivale a una imbécil, a una imbécil con un coeficiente de inteligencia máximo de cuarenta y cinco. . . ."

Arguye el apelante que el juez sentenciador limitó indebidamente la controversia a la capacidad legal de la perjudicada cuando la alegación de inocencia implicaba una negación de todos los hechos esenciales de la acusación; que el Dr. Guzmán no testificó que la perjudicada fuera una imbécil; que el juez al hacer referencia al testimonio de uno de los peritos sobre

el estado de imbecilidad de la perjudicada debió hacer referencia también a que en contrainterrogatorio ese perito testificó que el escrito de la perjudicada exigía una edad mínima de 9 a 10 años y que pudiera haber estudiantes universitarios que no lo pudieran hacer mejor; que "el método empleado por el Hon. Juez sentenciador de ir destacando aquellos extremos en la prueba del Pueblo que tomados en su contexto más fuerte contra el acusado tendían a establecer los elementos del delito, sin hacer resumen de cuanto más se dijo por los testigos . . . crea un desbalance perjudicial a los derechos del acusado"; que ha quedado fuera de la Regla 137 de las de Procedimiento Criminal la facultad del juez, provista en el anterior Art. 233 (8) del Código de Enjuiciamiento Criminal (34 L.P.R.A. sec. 712 (8)) de ". . . llamar la atención al jurado hacia la cuestión esencial de resolver y puntos principales en discusión . . . ." El apelante tomó excepción a las instrucciones por los fundamentos precedentes.

No hubo prueba específica de que el apelante no hubiese yacido con la perjudicada. Todo el caso giró alrededor de si la niña era una incapacitada mental y si su testimonio fue corroborado. No surgió controversia alguna durante el juicio con respecto a que el apelante tuvo contacto carnal con la perjudicada. Aunque el Dr. Guzmán no testificó específicamente que la perjudicada era una imbécil sí dijo que estaba incapacitada mentalmente debido a una lesión cerebral. Convenimos que hubiera sido aconsejable que se llevase a la atención del jurado el testimonio del Dr. Senior sobre las libretas y que el juez sentenciador debió indicarle al jurado que al pasar sobre el estado mental de la perjudicada debían tomar en consideración el testimonio de ésta. Sin embargo, a la luz del conjunto de instrucciones dadas al jurado, estas omisiones no causaron perjuicio sustancial al apelante. *Pueblo* v. *García Pomales*, 94 D.P.R. 224, 228 (1967).

Impugna el apelante, además, aquella parte de las instrucciones que lee así:

"La prueba de corroboración en este caso especial sobre la alegada incapacidad mental de la perjudicada para consentir equivale a la declaración de los peritos que declararon sobre su incapacidad mental. Como ustedes recordarán, la niña no habló sobre su capacidad mental. Su incapacidad mental ha tratado el fiscal de probarla con el testimonio de los peritos, los señores peritos a quienes ustedes aplicarán las normas que yo les he explicado para determinar si deben o no considerar su testimonio."

Alega el apelante, en efecto, que debió hacerse referencia al testimonio de la perjudicada. Sobre esto ya expresamos el criterio de que esta omisión no fue sustancialmente perjudicial.

■ 8-9. Apunta que el juez sentenciador incidió al denegar las siguientes dos instrucciones solicitadas por la defensa:

"1. Una mujer con un grado de inteligencia menor que el requerido por ley para hacer un contrato puede consentir al acto sexual sin que se cometa violación y si la mujer tiene suficiente intelecto para conocer la naturaleza del acto y da su consentimiento entonces no se comete el delito de violación.

2. El mero hecho que la mujer con quien se imputa a un acusado haber tenido relaciones sexuales tenga una edad mental menor de 14 años, no lo convierte en reo del delito de violación bajo una acusación que alegue que la mujer estaba incapacitada para consentir legalmente por razón de demencia u otro defecto mental."

La prueba no daba lugar a tales instrucciones pues era demostrativa de que la perjudicada tenía un cociente intelectual de una imbécil incapaz de consentir al acto sexual o de pesar la naturaleza y proyectar las consecuencias del acto que realizara.

10. Sostiene que incidió el tribunal de instancia al limitar al jurado a rendir un veredicto absolutorio en caso que entendiera que la menor tenía capacidad legal para consentir

o en caso que tuviera el jurado duda de que ella tuviera esa capacidad.

Alega el apelante que tenía derecho a que se instruyese al jurado específicamente que si hubiese duda sobre si el apelante tuvo contacto carnal con la perjudicada cualquiera que fuese el estado mental de ésta era el deber del jurado absolverle. Se basa en que al hacer alegación de inocencia, negó todos los hechos del delito imputádole.

La instrucción objetada fue, en la parte pertinente, la siguiente:

"Si vosotros llegáis a creer, fuera de toda duda razonable que este acusado, Carlos M. Cabrera Lozada, ese día diez de abril, a las seis de la tarde y en Mayagüez, P.R., ilegal, voluntaria, maliciosa y criminalmente yació con una mujer que no era la propia, o sea, que no era su esposa, de nombre Zulimi Isabel Ramos Lange, de quince años de edad, quien al tiempo de realizar el referido acto sexual estaba incapacitada por defecto mental para consentir legalmente y no tenía la referida perjudicada conciencia de la naturaleza del referido acto sexual, entonces será la obligación de ustedes de declarar a este acusado culpable del delito que se le imputa, o sea, violación técnica.

Si ustedes entendiesen, por la prueba presentada, que esta joven no era una incapacitada mental para la fecha de la ocurrencia de los hechos, diez de abril de 1965, o siéndolo no sufría de incapacidad mental tal que la inhibiera, o sea, la incapacitara de poder comprender las consecuencias y la naturaleza del acto que se estaba realizando, entonces no se habría cometido delito alguno y ustedes vendrían obligados a rendir un veredicto de no culpable a favor del acusado.

Si ustedes tuviesen duda razonable, y fundada, según yo les he explicado anteriormente, duda sobre si el acusado es o no culpable y no pudieran decidir si habría o no la capacidad legal que requiere la ley en estos casos para que el consentimiento haya sido prestado, pues, entonces el beneficio de la duda, como en todos los casos cuando hay duda, hay que dárselo en beneficio del acusado, rindiendo un veredicto de no culpable en favor del acusado."

Estas partes de las instrucciones, dentro del conjunto de la totalidad de las mismas, se referían al delito imputado y, por lo tanto, se ajustan a derecho.

■ 11–12. Por último, apunta que la sentencia es contraria a derecho y a las pruebas practicadas y que en todo caso dicha sentencia es el resultado de manifiesto error en la apreciación de la prueba.

En apoyo de estos apuntamientos el apelante reproduce sus anteriores argumentos. Señala que el relato de la perjudicada en cuanto al lugar, modo y circunstancias en que ocurrieron los hechos es absurdo; que no hubo prueba de corroboración legítimamente admisible y que el testimonio de la Sra. Mangual estaba viciado de pasión, enemistad y rencor hacia el acusado.

Hemos considerado la prueba en todos sus detalles y las instrucciones al jurado con respecto a la misma y el derecho aplicable y, a nuestro juicio, ni incidió el jurado en su apreciación de la misma.

*Por lo tanto, deberá confirmarse la sentencia dictada en este caso por el Tribunal Superior, Sala de Mayagüez, el 25 de abril de 1966.*

El Juez Asociado Señor Pérez Pimentel concurre en el resultado. El Juez Asociado Señor Dávila no intervino.