EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ANÍBAL RODRÍGUEZ MARTÍNEZ, acusado y apelante.

*Número:* CR-72-76     *Resuelto:* 30 de mayo de 1973

*Yamil Galib Frangie* y *Miguel A. Ferrer Rodríguez,* abogados del apelante; *J. F. Rodríguez Rivera, Procurador General Interino,* y *Américo Serra, Procurador General Auxiliar,* abogados de El Pueblo.

## SENTENCIA

Un jurado declaró culpable al apelante del delito de violación técnica cometido en una menor de 14 años de edad. No conforme con el fallo condenatorio nos pide su revocación

imputándole al tribunal de instancia los errores que seguidamente discutiremos:

1. "Erró el Tribunal *a quo* al permitir por sobre la objeción de la defensa, y como parte del *res gestae*, prueba de alegadas manifestaciones hechas por la presunta perjudicada a su señora madre."

■ Arguye el apelante que la declaración de la madre de la perjudicada era inadmisible como parte del *res gestae* porque ésta no fue la primera persona con quien habló la perjudicada. Del récord se desprende que la menor perjudicada relató a su abuela sus relaciones sexuales con el apelante frente a su señora madre. *Véase* T.E. págs. 42, 60, 85, 101 y 103. Las manifestaciones de la perjudicada a su abuela, estando presente su señora madre, fueron espontáneas y en la primera oportunidad que se presentó. Siendo así el testimonio de corroboración de la madre era admisible. *Cf. Pueblo* v. *Cabrera Lozada*, 99 D.P.R. 689 (1971); *Pueblo* v. *Aponte*, 77 D.P.R. 917 (1955). No se cometió el error apuntado.

2. "El Tribunal *a quo* erró al instruir al jurado con respecto al efecto y alcance de la prueba de buena reputación."

■ Se queja el apelante de que el tribunal de instancia se negó a transmitir una instrucción al efecto de que "La prueba de buena reputación que se presenta en un caso criminal por el acusado puede ser por sí sólo suficiente para establecer en vuestras mentes, en unión con la presunción de inocencia, la duda razonable que justifica la absolución." El tribunal, sin embargo, transmitió una instrucción sobre prueba de reputación que cumple adecuadamente con las exigencias del debido procedimiento de ley, a saber:

"El acusado en este caso ha presentado prueba de buena reputación suya. La buena reputación del acusado es un elemento de prueba que debe ser tomado en cuenta por el jurado para considerar las probabilidades de que el acusado cometiera los hechos que se le imputan en la acusación, pero si vosotros, des-

pués de pesar todo el resto de la evidencia presentada por una y otra parte, llegais al convencimiento fuera de duda razonable de que el acusado cometió el crimen por el cual se le acusa, su buena reputación no debe ser óbice para que ustedes traigan un veredicto de culpabilidad en su contra." (T.E. pág. 123.)

*Pueblo* v. *Negrón Vélez*, 96 D.P.R. 419 (1968), citado por el apelante en apoyo de su contención, no es de aplicación. Independientemente del hecho de que dicho caso se resolvió dos años después de celebrado el juicio en el caso de autos, como bien apunta el Procurador General, el mismo se refiere a una instrucción redactada en términos que limitaban indebidamente el alcance de la prueba de reputación. Debemos advertir que una instrucción similar a la del caso de autos fue sostenida en el caso *Pueblo* v. *Santiago González*, 97 D.P.R. 99 (1969).

3. "El Tribunal *a quo* incurrió en error, en ocasión de que el jurado regresara a sala en solicitud de que se le leyera el testimonio del Dr. Héctor E. Pabón, al permitir que se diese lectura únicamente a lo declarado por dicho testigo de cargo en su *testimonio directo* y no así también a lo declarado por él en el curso de la repregunta."

■ Aparece del récord que el presidente del jurado le pidió al tribunal que se leyera la declaración del Dr. Pabón porque "con respecto a la certificación hay cierta duda." (T.E. pág. 132.) La taquígrafa leyó al jurado el testimonio directo de este testigo de cargo, denegando el tribunal la solicitud de la defensa de que leyera también el contrainterrogatorio. La duda del jurado se refería al examen médico de la perjudicada que fue el único punto cubierto por el testimonio del Dr. Pabón. El examen directo de este testigo apenas cubre página y media del récord. El contrainterrogatorio no impugnó en forma alguna dicho testimonio.

La Regla 141 de Procedimiento Criminal no requiere que

en estos casos se lea el récord completo. (¹) Basta que se lea la parte del testimonio directo que interesa aclarar al jurado. Al respecto nos dice el Profesor ·Fricke comentando el Art. 1138 del Código Penal de California, equivalente a nuestra Regla 141, que bajo dicho artículo "se permite leer al jurado aquellas porciones del testimonio que ellos puedan interesar (*People* v. *Hawley*, 111 Cal. 78) y sólo es necesario leer aquellas porciones del récord que así se soliciten." (Traducción nuestra.) Fricke, *California Criminal Procedure*, 364 (5ta. ed.) Véanse, además, *People* v. *Carmical*, 65 Cal. Rptr. 504; *People* v. *Cathey*, 8 Cal. Rptr. 694.

4. "El Tribunal *a quo* erró al negarse a instruir al jurado con respecto a su obligación de absolver al acusado en caso de no dar crédito a la prueba de corroboración o de tener duda sobre su veracidad."

█ El apelante se queja que el tribunal no impartió las siguientes instrucciones:

"Para ustedes en este caso poder condenar al acusado no basta que le den entero crédito al testimonio vertido por Marlyn Ortiz Barbot. Con su solo testimonio ustedes no pueden condenar al acusado. Es necesario que ustedes le den crédito al testimonio de la testigo Juanita Barbot Matos, porque de no darle crédito a ese testimonio o de tener duda razonable sobre su veracidad aún cuando les mereciera crédito el testimonio de la presunta perjudicada es su obligación absolverlo."

El apuntamiento no tiene mérito. El tribunal de instancia impartió instrucciones claras y precisas sobre el requisito de corroboración y de duda razonable analizando sus diversos elementos a la luz de la prueba desfilada. Véase específicamente las instrucciones que aparecen a las páginas 116 a 121

---

(¹) La Regla 141 de las de Procedimiento Criminal dispone:

"Después que el jurado se hubiere retirado a deliberar, si se suscitare cualquier desacuerdo o duda entre los miembros con respecto a la prueba testifical, o desearen ser informados acerca de algún punto de derecho que surja de la causa, deberán requerir al oficial encargado de ellos que los conduzca al tribunal. Una vez en él, la información solicitada les será dada previa notificación al fiscal y al acusado o su abogado."

de la transcripción de evidencia y a las páginas 136 a 137.

5. "Erró el Tribunal *a quo* en las instrucciones adicionales que dio al jurado en ocasión de su segundo regreso a sala sin haber llegado a veredicto por cuanto las mismas causaron perjuicio al acusado al dar énfasis indebido a aspectos de la prueba de cargo en relación con las cuales el jurado no había solicitado ser instruido."

6. "Incidió el Tribunal *a quo* habida cuenta que tomadas en conjunto sus expresiones en la ocasión que apunta el señalamiento inmediatamente precedente, las mismas constituyeron una invasión de la facultad exclusiva del jurado a analizar, apreciar y evaluar la prueba habida en el caso."

7. "Erró el Tribunal *a quo* al negarse en esa misma ocasión a trasmitir al jurado una instrucción solicitada por la defensa y la cual además de proceder en derecho, se hacía necesaria con vista a las expresiones del jurado."

Estos tres errores se refieren a las instrucciones impartidas por el tribunal de instancia al regresar el jurado a sala por segunda vez. Surge del récord lo siguiente:

"HON JUEZ:

Entonces no están muy divïdidos, a juicio del tribunal. Quizás podrían llegar a una determinación final. ¿En qué cree el Señor Presidente que el tribunal pueda ayudarlos a resolver el caso?

*Señor Presidente*: Pues, de acuerdo con lo que hemos discutido hay diferentes puntos de vista.

HON. JUEZ:

No me diga cómo discutieron, ni lo que discutieron, ni el resultado de la discusión, esa es deliberación que no debe divulgarse, publicarse. Ahora, en qué materia o en qué punto de derecho, o en qué cuestión de hecho, cree el Señor Presidente que el Tribunal pueda ayudarlo adicionando alguna instrucción que sea necesaria para ver si pueden llegar a un acuerdo.

*Señor Presidente*: La prueba que corrobora las manifestaciones de la perjudicada ha sido completamente destruída, o sea, que ha habido mucha contradicción, o sea, la prueba, los dos testigos que usó el Ministerio Público. Más tarde en la misma declaración de un joven, el muchachito que nos ha hecho crear a

cierto grupo duda en cuanto a veracidad en sí del caso para inculpar directamente al acusado. Queremos impartir justicia."

*Señor Presidente*: La prueba que tenemos en las manos hay mucha duda y...

HON. JUEZ:

Por eso, pero con una adecuada discusión quizás podrían llegar a un acuerdo.

*Señor Presidente*: Ya lo intentamos.

HON. JUEZ:

¿Usted cree que el jurado ha asimilado bien las instrucciones del tribunal sobre la necesidad de corroboración en este caso?

*Señor Presidente*: Correcto, lo ha asimilado bien.

HON. JUEZ:

¿Y ha asimilado el jurado sobre el testimonio de la sola perjudicada, aunque sea enteramente creído por ustedes, no es prueba suficiente?

*Señor Presidente*: Completamente.

HON. JUEZ:

Claro, si no le creen a ella menos prueba hay para condenar, pues habría menos prueba todavía para condenar. Entonces, creído el testimonio de la niña, ha entendido el jurado entonces que él tiene que buscar si hay prueba que corrobore su testimonio. Usted sabe, si entendió el tribunal, que es la parte esencial del testimonio de la niña que hay que corroborar. ¿Lo entendió el jurado, cuál es la parte que necesariamente tiene que ser corroborada? No tienen que ser corroborados todos los extremos, todos los detalles, sino, qué parte de su testimonio tiene que corroborar. En primer lugar tiene que haber prueba de corroboración, o sea, prueba fuera del testimonio de la niña que conecte al acusado. Ustedes tienen que buscar a ver si en el resto de la prueba hay alguna prueba que conecte al acusado. Después tienen que ver si hay prueba del testimonio de la niña que conecte, que corrobore los dos elementos esenciales de este delito que yo les dije que son la edad de la niña por un lado que puede corroborarse por el certificado independientemente de los testimonios de ella y de la madre que habla sobre ese particular y el otro extremo de corroboración es el acto sexual, la relación sexual. Si no ha habido relación sexual y prueba de la penetración, prueba de la penetración, en cuyo caso tienen el testimonio

del doctor y el testimonio de la niña que habló sobre relación sexual habida. Independientemente del testimonio de la madre que es testimonio de una tercera persona quien oyó lo que le relataba la abuela y además a requerimiento de ella la niña le dio la información de lo que le sucedió ampliando en detalle los hechos que le había relatado a la abuela. Las contradicciones en una prueba puede el jurado utilizarlas para determinar el grado de credibilidad que debe darle al testimonio de la persona determinada pero no quiere decir que necesariamente tenga que excluir todo su testimonio, excluir todo su testimonio porque haya contradicción si es que las contradicciones no son fundamentales, no son hechos esenciales a probarse en el caso. Esa es la forma de analizar el testimonio de una persona, de un testigo, en cuanto a la credibilidad que debe dársele. ¿Alguna otra pregunta? Claro está, me parece que todos entendieron, pero voy a repetirles que en caso de duda razonable hay que dársela al acusado y absolver libremente en duda razonable. Duda razonable no quiere decir que estén encontrados los criterios del jurado o si no hay prueba suficiente en derecho para sostener el delito, en cualquiera de esos casos hay que darle el beneficio de la duda al acusado. ¿Alguna otra duda?

*Señor Presidente*: No.

El Tribunal ordena al jurado retirarse a deliberar.

(Se retira a las 6:40 P.M.)

(T.E. págs. 134–135 y 136–138.)

■ La contención del apelante es que el tribunal de instancia destacó algunos extremos de la prueba de cargo creando un desbalance perjudicial en su contra al resumir todo lo que tenía que ver con la comisión del delito. No estamos de acuerdo.

Las anteriores instrucciones expresaron con propiedad los elementos de la prueba de corroboración puntualizando la necesidad de ser creída más allá de duda razonable. El juez de instancia, en ánimo genuino de ayudar al jurado a lograr un veredicto, repitió más o menos las mismas instrucciones que ya anteriormente había impartido y que fueron objeto del cuarto apuntamiento. Nada hay en dichas instrucciones que pueda implicar parcialidad o intimidación por parte del juez

de instancia. Por el contrario, el juez se dirigió al jurado en términos muy cuidadosos guardándose de que sus palabras pudieran sugerir la obligación del jurado de llegar a un veredicto determinado o de influenciarlo impropiamente. No se cometieron los errores apuntados.

8. "Erró el Tribunal *a quo* al comentar y calificar en sus instrucciones al jurado el hecho de que el acusado no hubiese testificado y no hubiese presentado prueba alguna de defensa en cuanto a los alegados hechos."

■ Arguye el apelante que dicha instrucción equivale a llamar la atención al jurado sobre el hecho de que el acusado ha guardado silencio y que, además, calificó ese hecho como una "omisión". El apuntamiento es frívolo. El mismo fue resuelto adversamente a la contención del apelante en *Pueblo* v. *Moreu Pérez*, Cr. 72-102, Sent. de 5 de abril de 1973 y ratificado en *Pueblo* v. *Romero Cuesta*, 101 D.P.R. 404 (1973) en el cual concluimos que dicha instrucción no lesiona derechos fundamentales del acusado, aun cuando se haya calificado el acto del acusado de no declarar con el vocablo de "omisión".

9. "La sentencia apelada es contraria a derecho o es el resultado de manifiesto error en la apreciación de la prueba."

■ El apuntamiento es inmeritorio. Hemos leído el récord y estamos convencidos de que la prueba desfilada, de ser creída como lo fue, es suficiente para sostener el fallo condenatorio.

Se confirma la sentencia recurrida.

Así lo pronunció y manda el Tribunal y certifica el señor Secretario. El Juez Asociado Señor Irizarry Yunqué disiente en voto separado en el cual concurren los Jueces Asociados Señores Cadilla Ginorio y Díaz Cruz.

(Fdo.) José L. Carrasquillo

*Secretario*

—O—

Voto disidente del Juez Asociado Señor Irizarry Yunqué en el cual concurren los Jueces Asociados Señores Cadilla Ginorio y Díaz Cruz

San Juan, Puerto Rico, a 30 de mayo de 1973

Ocurrió un incidente en este caso que a mi juicio amerita la revocación y que se ordene la celebración de un nuevo juicio. Luego de haber comenzado el jurado a deliberar, regresó a Sala. Sucedió lo siguiente:

"HON. JUEZ:

Señor Presidente del Jurado, ¿el jurado ha llegado a algún veredicto en este caso?

No, Señor, todavía. Solamente que hay uno de los jurados o varios de los jurados que quieren que se le vuelva a leer la declaración del doctor Pabón. Con respecto a la certificación hay cierta duda.

HON. JUEZ:

Entonces, vamos a hacer una cosa, vamos a darle tiempo a la taquígrafa para que localice la declaración del doctor Pabón, que no fue muy extensa, para que la lea directamente del récord a ustedes.

Sr. Presidente del Jurado:

Y otra pregunta. ¿Podría obtener el certificado del doctor de Lajas?

HON. JUEZ:

No fue presentado ni introducido en evidencia, de manera que no lo pueden considerar como prueba en el caso y el Juez no podría suplirle esa falta de prueba en el caso. ¿Alguna otra pregunta?

¿Ninguna más?

Se les ordena retirarse a deliberar.

(Se retira el jurado.)

LIC. GALIB:

Con la venia de Vuestro Honor. La defensa quiere señalar el hecho de que se le ha dado lectura al jurado del testimonio en

directo del doctor Héctor E. Pabón. Nos parecería que en justicia para el acusado debió dársele lectura al contrainterrogatorio o haberle leído las notas de Vuestro Honor con respecto al contrainterrogatorio, o sea, al principio dijimos que estábamos dispuestos a someterlo por las notas de Su Señoría.

HON. JUEZ:

El récord debe revelar que no se debió seguir leyendo porque ya habían escuchado el punto.

LIC. GALIB:

Quiero señalar a Su Señoría con la mayor honestidad. . . ¿Su Señoría le preguntó eso al jurado? No queremos que vaya al récord la impresión de que se cortó.

HON. JUEZ:

Que conste en récord la excepción anotada por la defensa y receso del Tribunal hasta que el jurado desee regresar a Sala." (T.E. págs. 132–133.)

El testimonio del Dr. Pabón está contenido en 13 páginas de la transcripción de las cuales escasamente dos contenían el examen directo. De la repregunta surgen numerosas circunstancias que muy bien podían dar base a las dudas que algunos de los jurados tenían. La perjudicada fue llevada por su madre donde el Dr. Pabón en Cabo Rojo, para una consulta privada, no obstante que dos días después de ocurrir la alegada violación y por disposición del juez de Lajas, quien tenía a su cargo la investigación, había sido examinada en Lajas por otro médico, Dr. Nazario. No se le informó al Dr. Pabón sobre los resultados del examen practicado por el primer médico. El Dr. Pabón examinó a la perjudicada el 17 de mayo, es decir, a los nueve días del incidente de su alegada desfloración por el acusado-apelante, y siete días después de examinada por el Dr. Nazario. Un minuto antes de entrar a declarar vino en conocimiento el Dr. Pabón del resultado del examen del Dr. Nazario. El testigo elaboró sobre lo que constituye desfloración, señalando en una parte que puede haber una sola desfloración o puede haber varias, dependiendo del grado de elasticidad del himen (T.E. pág. 8) ; y elaboró sobre

lo que es desfloración no inmediata, reciente y antigua y el tiempo de cicatrización de la herida al causarse la ruptura del himen. A la pregunta de qué facultativo está en mejores condiciones de apreciar el tiempo aproximado transcurrido desde la desfloración declaró que el primero que examinó (T.E. págs. 11–12). Explicó la diferencia entre lo que debe encontrarse a las 48 horas de la desfloración y la condición cuando él examinó a la perjudicada, señalando la presencia de edema de la región, hematoma alrededor de los bordes de la ruptura del himen, presencia de glóbulos y coágulos de sangre, y apariencia de la herida en sus bordes a las 48 horas, que describió como "edematosas, enrojecidas, cortadas", "en carne viva" (T.E. págs. 15–16).

En este caso el jurado nunca conoció el resultado del examen hecho por el primer facultativo, Dr. Nazario. Nótese su insistencia en conocer "el certificado del doctor de Lajas." Es significativo que la madre de la perjudicada negara durante su testimonio en el acto del juicio que conociera el resultado del examen hecho por el Dr. Nazario, cosa difícil de creer, y que dicidiera llevarla donde un médico privado a quien ella conocía, en Cabo Rojo, para que hiciera el mismo examen. Es significativo, además, que según dijo ella, llevó a su hija al Dr. Pabón al otro día de ser examinada por el Dr. Nazario, es decir, el día 11, mientras que el Dr. Pabón declaró que la examinó el día 17.

Opino que si el jurado tenía dudas y solicitó oír la declaración del Dr. Pabón, debió leérsele completa o, complaciendo la petición del abogado defensor, leérsele las notas del juez. Al no hacerse así, y leérsele solamente lo que el médico declaró a preguntas del fiscal, se desvirtuó la eficacia del contrainterrogatorio, que es donde se le da vida al principio de la confrontación consagrado en la Carta de Derechos de nuestra Constitución. Art. II, Sec. 11, Constitución del Estado Libre Asociado de Puerto Rico.

En el caso que nos ocupa, las partes estipularon que no se

hiciera por el juez un resumen de la prueba desfilada al trasmitirse sus instrucciones al jurado. Este hecho abunda en la necesidad de que, al leérsele la declaración del Dr. Pabón no se recortara y se prescindiera del contrainterrogatorio. Con ello se privó al acusado-apelante del derecho que tenía a que el jurado considerara y pesara lo declarado por el testigo a preguntas de su abogado defensor. No hacerlo en esa etapa crucial de la deliberación del jurado, que interrumpió porque tenía duda sobre la declaración del médico, y darles únicamente la versión del examen directo, podía darse a la interpretación por parte del jurado de que eso era lo único importante y lo único que ellos tenían que tomar en cuenta de la declaración del médico.

La repregunta es el fin esencial de la confrontación de testigos. *Pueblo* v. *Vargas,* 74 D.P.R. 144 (1952) ; *Pointer* v. *Texas,* 380 U.S. 400, 132 L.Ed.2d 923, 85 S.Ct. 1005. Dijimos en *Pueblo* v. *Pacheco Padilla,* 92 D.P.R. 894, 897–898 (1965) (Dávila) :

"El derecho a contrainterrogar un testigo es uno fundamental en la celebración de un juicio justo e imparcial. Lo consagra la Sec. 11 de la Carta de Derechos de nuestra Constitución cuando expresa que todo acusado tiene derecho 'a carearse con los testigos de cargo'. Es el medio que tiene la defensa para descubrir la verdad. Privarlo de ese derecho en relación con uno de los ingredientes principales en la comisión de un delito es error que conlleva la revocación de la sentencia. Haber consumado el acto sexual es el ingrediente principal en el delito imputado al apelante. No permitir que la defensa ahondara en ese respecto para averiguar si en verdad se había consumado el acto, perjudicó al acusado."

El Procurador General argumenta que, aplicando la Regla 141 de Procedimiento Criminal, cuando el jurado interesa aclarar un punto basta con leerle la parte del testimonio que cubre esa prueba. Cita a Fricke, *California Criminal Procedure,* 5ta. ed., pág. 364, comentando el Art. 1138 del Código Penal de California, de donde proviene la Regla 141:

"Bajo este artículo es permisible leer al jurado aquellas porciones del testimonio que ellos desean que les sean leídas (*People* v. *Hawley*, 111 Cal. 78) y solamente esas porciones de la prueba solicitadas necesitan leerse (*People* v. *Smith*, 3 Cal. App. 62)." (Traducción mía.)

Estoy de acuerdo que así sea. Pero ese no es el caso aquí. El jurado no solicitó que determinada *parte* del testimonio del Dr. Pabón le fuera leída. Solicitó, según palabras del presidente, "que se le vuelva a leer *la declaración* del Dr. Pabón." (Énfasis suplido.) La declaración del Dr. Pabón no es lo que él dijo durante el interrogatorio directo a cargo del fiscal, sino todo lo que él declaró, incluyendo el contrainterrogatorio. Sin duda que esa parte de su declaración era tan importante y quizás más importante que la primera. El apelante tenía derecho a que el jurado la oyera.

Así se hacía valer su derecho de confrontación.

Por estas consideraciones, no estoy conforme y disiento de la sentencia de este Tribunal que confirma la dictada por el tribunal de instancia. Debió revocarse y ordenarse un nuevo juicio.